**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CHRISTOPHER STOWE, HERB MEYEROWITZ, JIM FALLOW, JAY LITTLE, MAVERICK WATSON, and HEIDI FENTON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HEARST MAGAZINE MEDIA, INC., d/b/a BICYCLING<br><br>Defendant. | C.A. No.: 1:25-cv-01128-RGA<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**


P. Bradford deLeeuw (DE Bar #3569)
**DELEEUW LAW LLC**
1301 Walnut Green Road
Wilmington, DE 19807
(302) 274-2180
(302) 351-6905 (fax)
brad@deleeuwlaw.com

*Counsel for Plaintiffs*

OF COUNSEL:

Mark S. Reich*
Michael N. Pollack*
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
mreich@zlk.com
mpollack@zlk.com

**Pro hac vice forthcoming*

## TABLE OF CONTENTS

INTRODUCTION ..... 1

NATURE & STAGE OF PROCEEDINGS ..... 2

STATEMENT OF RELEVANT FACTS ..... 2

LEGAL STANDARD ..... 3

SUMMARY OF ARGUMENT ..... 4

ARGUMENT ..... 5

A. Defendant Has Not Met Its Burden To Prove Formation Of Any Arbitration Agreement 5

B. Defendant Cannot Establish That Plaintiffs Had Inquiry Notice Of The Terms ..... 8

C. The FAA Does Not Favor Enforcement of Arbitration Agreements Where Contract Formation Is Disputed ..... 11

D. Arbitration Cannot Be Compelled Under Either Rule 12(b)(6) Or Rule 56 Because Arbitrability Is Not Apparent on the Pleadings And Material Fact Questions Remain ..... 13

E. Defendant's Reliance on The Pre-Suit Letter Is a Mischaracterization And Does Not Establish Assent, Waiver, Or An Admission ..... 15

CONCLUSION ..... 16

# TABLE OF AUTHORITIES

**Cases**

*Antognoli v. Christiana Care Health Servs.*,
No. N21C-01-139 FJJ, 2023 Del. Super. LEXIS 743 (Del. Super. Aug. 22, 2023).................... 9

*Ari v. Sanofi Pasteur, Inc,*
No. 3:11-CV-02198, 2017 U.S. Dist. LEXIS 143826 (M.D. Pa. Sept. 6, 2017)....................... 12

*AT&T Technologies, Inc. v. Communications Workers of America*,
475 U.S. 643 (1986) ........................................................................................... 9, 18

*Bacon v. Avis Budget Grp., Inc.,*
959 F.3d 590 (3d Cir. 2020) ..................................................................................... 10

*Barrett v. Konica Minolta Exec. Severance Plan*,
No. 24-cv-05067 (JXN)(JSA), 2025 WL 965707 (D.N.J. Mar. 31, 2025)............................... 19

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022). ............................................................................ 14, 15

*Botello v. Navient Sols., LLC*,
No. 22-5601, 2023 U.S. Dist. LEXIS 170962 (D.N.J. Mar. 22, 2023) .................................... 20

*Century Indem. Co. v. Certain Underwriters at Lloyd's*,
584 F.3d 513 (3d Cir. 2009) ................................................................................. 9, 17

*Checchia v. Solo Funds, Inc.*,
No. 23-444-KSM, 2023 WL 3868369 (E.D. Pa. June 7, 2023) ............................................... 10

*Davitashvili v. Grubhub, Inc.*,
No. 20-cv-3000 (LAK), 2023 U.S. Dist. LEXIS 44780 (S.D.N.Y. March 16, 2023)............... 11

*Dixon v. Michael Kors Retail, Inc.*,
468 F. Supp. 3d 409 (D. Mass. 2020)......................................................................... 16

*Doe v. Massage Envy Franchising, LLC*,
No. S20C-05-025 RFS, 2020 WL 7624622 (Del. Super. Dec. 21, 2020) ................................ 16

*Edmundson v. Klarna, Inc.*,
85 F.4th 695 (2d Cir. 2023) ....................................................................................... 13

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) ......................................................................................... 9, 10, 22

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000) ..................................................................................................... 19

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*,
716 F.3d 764 (3d Cir. 2013) ........ passim

*Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999) ........ 17

*In re Zappos, Inc.*,
893 F. Supp. 2d 1058 (D. Nev. 2012) ........ 13

*Jaludi v. Citigroup*,
933 F.3d 246 (3d Cir. 2019) ........ 18

*Kaneff v. Del. Title Loans, Inc.*
587 F.3d 616 (3d Cir. 2009) ........ 19

*Lloyd v. Hovensa, LLC*,
369 F.3d 263, 274 (3d Cir. 2004) ........ 21

*Maree v. Deutsche Lufthansa AG*,
No. SACV 20-885-MWF (MRWx), 2020 U.S. Dist. LEXIS 190145 (C.D. Cal. Oct. 7, 2020) 13

*Meyer v. Uber Technologies, Inc.*,
868 F.3d 78 (2nd Cir. 2017) ........ 16

*MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*,
974 F.3d 386 (3rd Cir. 2020) ........ 11, 18, 22

*Nestle Waters N. Am., Inc. v. Bollman*,
505 F.3d 498 (6th Cir. 2007) ........ 17

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ........ 13

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) ........ 17

*Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*,
636 F.2d 51 (3rd Cir. 1980) ........ 10

*Payne v. Samsung Elecs. Am., Inc.*,
No. N23C-03-193 FWW, 2024 Del. Super. LEXIS 114 (Del. Super. Feb. 21, 2024) ........ 14

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010) ........ 18

*Saleh v. Udemy, Inc.*,
No. 23-02207 (JXN) (JSA), 2024 U.S. Dist. LEXIS 51183 (D.N.J., Mar. 21, 2024) ........ 16

*Sandvik AB v. Advent Int'l Corp.*,
220 F.3d 99 (3d Cir. 2000) ........ 18

*SBC Interactive, Inc. v. Corp. Media Partners*,
714 A.2d 758 (Del. 1998) .......... 19

*Seus v. John Nuveen & Co.*,
146 F.3d 175, 178 (3d Cir. 1998) .......... 17

*Skinner v. Peninsula Healthcare Servs., LLC*,
No. N20C-09-178 FJJ, 2021 Del. Super. LEXIS 180 (Del. Super. Mar. 1, 2021) .......... 10, 11

*Smith v. Spizzirri*,
601 U.S. 472 (2024) .......... 19

*Specht v. Netscape Communications Corp.*,
306 F.3d 17 (2nd Cir. 2002) .......... 16

*Starke v. SquareTrade, Inc.*,
913 F.3d 279 (2d Cir. 2019) .......... 14

*StubHub, Inc. V. Ball*,
676 S.W.3d 193 (Tex. 14th Dist. 2023) .......... 13

*United Health Alliance, LLC v. United Medical, LLC*,
No. 7710–VCP, 2013 WL 6383026 (Del. Ch. Nov. 27, 2013) .......... 9, 11

*Young v. Experian Info. Sols., Inc.*,
does not support its position; rather, it confirms that discovery is required here. 119 F.4th 314, 321 (3d Cir. 2024)) .......... 20

*Zachman v. Hudson Valley Fed. Credit Union*,
49 F.4th 95 (2d Cir. 2022) .......... 10, 16

*Zirpoli v. Midland Funding, LLC*,
48 F.4th 136 (3d Cir. 2022) .......... 18

**Statutes**

California Invasion of Privacy Act (CIPA) .......... 7, 8

Federal Arbitration Act ("FAA") .......... 17, 18

Federal Wiretap Act .......... 7, 8

Pennsylvania Wiretapping and Electronic Surveillance Control Act (WESCA) .......... 7, 8

Video Privacy Protection Act (VPPA) .......... 7, 8

**Rules**

Federal Rule of Evidence 602 .......... 12

## INTRODUCTION

Hearst Magazine Media, Inc. ("Defendant") embedded tracking technologies on its Bicycling.com website ("Website"), including the Facebook Pixel and Google Analytics tools. These technologies intercepted and disclosed users' video-viewing information, search behavior, and unique identifiers to third parties such as Meta Platform Inc ("Meta") and Google LLC ("Google"), without consent. Defendant's conduct violates the Video Privacy Protection Act (VPPA), the Federal Wiretap Act, the California Invasion of Privacy Act (CIPA), the Pennsylvania Wiretapping and Electronic Surveillance Control Act (WESCA), and common law invasion of privacy.

In an attempt to avoid litigating the merits of Plaintiffs' claims on a class-wide basis, Defendant now seeks to arbitrate those claims on the grounds that its "Terms of Use" ("Terms") contain a binding agreement to arbitrate. But Defendant's Motion to Compel Arbitration (the "Motion") must be denied because Defendant has failed to prove that a valid agreement to arbitrate was ever formed.

Defendant has failed to present any dispositive evidence demonstrating that Plaintiffs had actual notice of the Terms. It has produced no contemporaneous records showing that any Plaintiff was shown, reviewed, or assented to the Terms. Instead, Defendant offers only "illustrative examples" of alleged checkout screens ("Purchase Screens") and sign-up or renewal screens ("Account Screens") where the Terms were purportedly presented. Those examples are drawn from other publications and not shown to reflect the interfaces presented to Plaintiffs on Bicycling.com at the relevant times. *Still*, Defendant asks this Court to assume they functioned identically to what Plaintiffs encountered.

Moreover, Defendant's declaration (the "Dalton Declaration" or "Dalton Decl.") admits that "aspects of [Defendant's] checkout process have varied over time" (Dalton Decl. ¶ 14), yet provides only a limited number of illustrative screens without any indication of when those interfaces were in use or how they were presented to Plaintiffs.

Furthermore, a closer examination of the Purchase Screens and Account Screens (collectively, the "Terms Screens") that Defendant did produce raises additional concerns, and reveals significant flaws, namely whether Plaintiffs would have noticed the Terms at all given their overall visual presentation and limitations, and whether the layout of the screens created ambiguity as to what actions, if any, would constitute assent to be bound by the Terms.

Accordingly, Defendant fails to carry its burden to establish assent, and the evidence it offers falls short. Because no agreement to arbitrate was ever formed, the Court should deny Defendant's Motion.

## NATURE & STAGE OF PROCEEDINGS

Plaintiffs filed their Class Action Complaint ("Complaint") against Defendant on September 10, 2025. D.I. 1. The Complaint asserts claims under various federal and state privacy laws, including the VPPA, WESCA, CIPA, the Federal Wiretap Act, and common law invasion of privacy. On October 23, 2025, upon stipulation of the parties, the Court ordered Defendant to file its Motion by November 12, 2025, and extended Defendant's time to respond to the Complaint, if required, to 30 days after the Court's ruling on the Motion. D.I. 5, 7.

## STATEMENT OF RELEVANT FACTS

Defendant embedded tracking technologies on its Website to intercept and disclose its users' sensitive data, including their video-viewing history and search terms, to third parties like Meta and Google. Compl. ¶¶ 1, 5.

Plaintiffs are individuals who accessed *Bicycling.com* ("Website") to view video content. Their relationships with the Website vary: Jim Fallow (2015), Herb Meyerowitz (2020), Christopher Stowe (2022), and Maverick Watson (2023) became paid subscribers, while Jay Little (2020) and Heidi Fenton (2024) signed up for free newsletters. The Complaint alleges that Defendant's tracking technologies intercept and disclose users' video-viewing history instantaneously upon accessing video pages on the Website, prior to any alleged agreement. Compl. ¶ 12.

Defendant admits that "it does not maintain [examples of its checkout and other flows] over time separately for each publication. Motion at 8, n.6. Indeed, the Purchase Screens provided in the Dalton Declaration are from *House Beautiful* and *Women's Health*. (*See* Dalton. Decl., Exs. B-C), and an Account Screen is from *Food Network* (*id.* at Ex. G).

**LEGAL STANDARD**

On a motion to compel arbitration, the Court must determine: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 522-23 (3d Cir. 2009). "[A]rbitration is simply a matter of contract," and courts apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986) (stating "a party cannot be required to submit to arbitration any dispute which he or she has not agreed so to submit").

Under Delaware law, contract formation requires mutual assent, "a complete meeting of the minds of the parties." *United Health Alliance, LLC v. United Medical, LLC*, No. 7710–VCP, 2013 WL 6383026, at *6 (Del. Ch. Nov. 27, 2013) (*citing Antognoli v. Christiana Care Health*

*Servs.*, No. N21C-01-139 FJJ, 2023 Del. Super. LEXIS 743, at *4 (Del. Super. Aug. 22, 2023)). A party seeking to enforce an arbitration agreement has the initial burden of establishing the existence of a valid agreement to arbitrate. *Skinner v. Peninsula Healthcare Servs., LLC*, No. N20C-09-178 FJJ, 2021 Del. Super. LEXIS 180, at *6 (Del. Super. Mar. 1, 2021) (*quoting First Options of Chi., Inc.,* 514 U.S. at 944). The Court may award arbitration "only if there is 'an express unequivocal agreement to that effect.'" *Guidotti v. Legal Helpers Debt Resolution, L.L.C.,* 716 F.3d 764, 775 (3d Cir. 2013). Absent proof of mutual assent, no arbitration agreement exists.

## SUMMARY OF ARGUMENT

Defendant's Motion fails because it cannot establish the existence of a valid agreement to arbitrate. *First,* Defendant has not met its burden to prove the formation, or existence, of an arbitration contract: their evidence regarding which screens Plaintiffs saw, and when, is disputed and subject to credibility determinations inappropriate at this stage. *See Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 104 (2d Cir. 2022) (finding district court erred in relying on a record that "d[id] not contain screenshots of the webpage(s) used to register"); *see also Par-Knit Mills, Inc. v. Stockbridge Fabrics Co*., 636 F.2d 51, 54 (3d Cir. 1980) (holding before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect).

*Second*, even if this Court were to find that the Terms Screens are sufficient to establish the presentment of any Terms Plaintiffs could have encountered, Defendant still cannot show that Plaintiffs had inquiry notice of those Terms because the website did not provide reasonably conspicuous notice of them. *See Bacon v. Avis Budget Grp., Inc.,* 959 F.3d 590, 604 (3d Cir. 2020) (affirming District Court's denial of motion to compel arbitration where defendants failed to produce admissible evidence establishing that there was reasonably conspicuous notice of the

terms); *see also Checchia v. Solo Funds, Inc*., No. 23-444-KSM, 2023 WL 3868369, at 9–10 (E.D. Pa. June 7, 2023) (denying arbitration where notice was not reasonably conspicuous because the "[t]erms of [s]ervice" hyperlink was not in close proximity to the "I agree" checkbox, lacked underlining, and used a font color similar to the surrounding text).

Lastly, the evidentiary gaps in Defendant's submissions, including the Dalton Declaration's reliance on Terms Screens from other publications and the absence of contemporaneous records, require the Court to evaluate the Motion under Rule 56 rather than Rule 12. *See Guidotti,* 716 F.3d at 767.

## ARGUMENT

### A. Defendant Has Not Met Its Burden To Prove Formation Of Any Arbitration Agreement

A party seeking to enforce an arbitration agreement has the initial burden of establishing the existence of a valid agreement to arbitrate. *Skinner,* 2021 WL 778324, at *3; *see also United Health Alliance,* 2013 WL 6383026, at *7 (providing that the "burden of proving that a valid contract existed—and its terms—is on the party seeking to enforce the contract"). This burden is heavy one, and the Court must give the party denying the existence of an agreement to arbitrate the benefit of all reasonable doubts and inferences. *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 395 (3rd Cir. 2020).

Here, Defendant has not met its burden. For example, courts evaluating a motion to compel arbitration require conclusive evidence of assent, such as business records showing a user's last login and evidence that the user clicked to accept the agreement. *See Davitashvili v. Grubhub, Inc.*, No. 20-cv-3000 (LAK), 2023 U.S. Dist. LEXIS 44780, at *22 (S.D.N.Y. March 16, 2023) (motion to compel denied where defendant failed to provide evidence that plaintiff saw or clicked to assent to any Terms).

Ms. Dalton in her declaration claims to have reviewed "records", but fails to produce any contemporaneous server log, IP timestamp, or backend database entry showing that these specific Plaintiffs ever clicked an "I AGREE", "Complete Purchase", or SIGN ME UP" button. Instead, the Dalton Decl. offers only generic "illustrative examples" (Motion at 8, fn. 6) from other websites and asks the Court to speculate about what Plaintiffs "would have had to agree to," rather than producing evidence of what they actually saw or accepted. Motion at 8. Accordingly, Ms. Dalton's assertion that *Bicycling* screens "would have looked the same" (Dalton Decl. ¶ 15) constitutes impermissible speculation under Federal Rule of Evidence 602. *See Ari v. Sanofi Pasteur, Inc,* No. 3:11-CV-02198, 2017 U.S. Dist. LEXIS 143826, at 23 (M.D. Pa. Sept. 6, 2017) ("[C]ourts have not extended such leniency to allow witness testimony that is merely based on speculation as to what a third party believed or knew."). This is particularly true where the witness lacks personal knowledge of the event at issue. She cannot testify to what a webpage "would have" looked like on any specific date when her company admittedly "does not maintain [screens] separately for each publication." (Dalton Decl. ¶ 16 n.6).

Indeed, Defendant attempts to bind Plaintiffs using screenshots from interfaces not shown to reflect Bicycling.com at the relevant times. Specifically, Exhibit B (relied on for Plaintiff Watson) is a checkout page for House Beautiful, not Bicycling.com. Exhibit C (relied on for Plaintiff Meyerowitz) is a subscription page for Women's Health. And Exhibit G (relied on for Plaintiff Fallow) displays a URL for the Food Network (service.foodnetwork.com) and operates as an email opt-in or account-access page, not a purchase or sign-up flow that clearly manifests contractual assent. (Dalton Decl. ¶ 21). Moreover, Ms. Dalton even admits that Defendant's checkout process "varied over time" and involved different button labels (e.g., "Checkout" vs. "Complete Purchase") (Dalton Decl. ¶ 14). In the absence of evidence tying these interfaces to the

transactions at issue, such unrelated examples cannot establish that Plaintiffs entered into a valid arbitration agreement. *See Maree v. Deutsche Lufthansa AG*, No. SACV 20-885-MWF (MRWx), 2020 U.S. Dist. LEXIS 190145, at *8-9 (C.D. Cal. Oct. 7, 2020) ("The Court agrees with Plaintiff that it would be improper to rule on the existence of an arbitration agreement without first determining, as a factual matter, what the website looked like on the relevant date"); *see also StubHub, Inc. V. Ball*, 676 S.W.3d 193, at 203 (Tex. 14th Dist. 2023) (denying motion to compel denied where defendant failed to provide "evidence of the design and content of the relevant user interface").

Defendant incorrectly claims that it need not identify the specific version of the Terms presented to each Plaintiff because all versions supposedly contain an arbitration clause. This argument conflates the existence of an arbitration provision with proof that any Plaintiff was shown, noticed, or assented to it. Courts must look to the "design and content of the relevant interface" to determine if users were put on notice. *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 704 (2d Cir. 2023). That inquiry requires Defendant to show how the terms were actually presented to users; it cannot be satisfied by abstract descriptions of contractual language divorced from the interface in which assent allegedly occurred. Because Defendant has not produced contemporaneous screenshots, server logs, or click-stream data, it has failed to meet its burden. Defendant cannot ask this Court to assume that the presentation or existence of various Terms Screens remained "consistent" over a multi-year period based solely on Ms. Dalton's retrospective generalization, particularly where Defendant admits that its checkout process "varied over time." (Dalton Decl. ¶ 14). Courts routinely reject efforts to compel arbitration on such a thin record. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (denying motion to compel arbitration where there was no evidence that the plaintiff had actual notice of, or was required to

affirmatively acknowledge, the terms of use); *see also In re Zappos, Inc.*, 893 F. Supp. 2d 1058, 1064 (D. Nev. 2012) (denying motion to compel arbitration because "[w]ithout direct evidence that Plaintiffs clicked on the Terms of Use, we cannot conclude that Plaintiffs ever viewed, let alone manifested assent to, the Terms of Use.").

**B. Defendant Cannot Establish That Plaintiffs Had Inquiry Notice Of The Terms**

Defendant argues that "clickwrap" or "sign-up wrap" agreements are routinely enforced by courts (Motion at 15). There is a critical distinction, however, between the two. Courts enforce clickwrap agreements where users must affirmatively click an "I Agree" button indicating agreement to the terms. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 853 (9th Cir. 2022). Sign-in-wrap agreements, by contrast, are fundamentally different. In such agreements, "the consumer's assent is largely passive, and the existence of a contract turns on whether a reasonably prudent offeree would be on inquiry notice of the terms at issue." *Sellers v. JustAnswer LLC*, 289 Cal. Rptr. 3d 1, 21 (Ct. App. 2021).

Here, the majority of the Terms Screens (*see* Dalton Decl., Exs. B - E) resemble classic sign-in-wrap agreements. Therefore, with respect to Plaintiffs associated with these sign-in screens, Defendant must show that they had inquiry notice of the Terms.[1]

A finding of inquiry notice requires that: (1) the website provide reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer take some action, such as clicking a button or checking a box, that unambiguously manifests assent to those terms. *See Payne v. Samsung Elecs. Am., Inc.*, No. N23C-03-193 FWW, 2024 Del. Super. LEXIS 114, at *1 (Del. Super. Feb. 21, 2024). When evaluating inquiry notice, courts examine "the design and content of the relevant interface to determine if the terms were presented to the offeree in a way

[1] The only Terms Screen that resembles a pure "clickwrap" agreement is Exhibit F.

that would put her on inquiry notice of such terms." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019).

The sign-in-wrap Terms Screens put forth in the Dalton Declaration do not provide reasonably conspicuous notice of the Terms or support a finding of an unambiguous manifestation of assent. "To be conspicuous in the context of a website, a notice of terms and conditions must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Berman,* 30 F.4th at 853. "A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Id.* at 857.

The sign-in-wrap Terms Screens that Plaintiffs allegedly encountered clearly fail this standard. As shown in Exhibits B–D, the references to the Terms appear in small font and often blend into the surrounding text or page background. For example, Exhibit B shows that the reference to the Terms appears only in a single line of small black body text, placed between other subscription and billing disclosures, and positioned directly above the checkout buttons. The phrase "Terms of Use" is embedded mid-sentence, in the same font, color, and weight as the surrounding language without any heading, capitalization change, icon, or other visual cue signaling that it contains the operative contract or an arbitration provision.

Exhibit C presents similar deficiencies, containing a plethora of additional and distracting disclosures, pricing information, and multiple checkout buttons. These features create a visually dense layout in which the Terms link does not stand out. Taken together, the small, non-salient hyperlink text, particularly when considered with the length and complexity of the Terms, makes the relevant provisions difficult for consumers to notice before completing a transaction.

Moreover, Exhibit G presents the user with a "Create an Account" button and a "Find Your Account" button, but it does not inform the user which, if any, action constitutes assent to the Terms. The faint "Terms of Use" hyperlink appears only after the statement, "Include your email to receive important subscription notices," suggesting an email opt-in rather than contractual agreement. Accordingly, no button or user action on this screen clearly signals that clicking it constitutes assent to the Terms. Nor does anything on the screen indicate that a user must click or even review the hyperlinked Terms in order to create or access an account. *See Specht v. Netscape Communications Corp.*, 306 F.3d 17, 29–30 (2nd Cir. 2002) ("a consumer's clicking on a download button does not communicate assent to contractual terms if the offer did not make clear to the consumer that clicking on the download button would signify assent to those terms"); *see also Dixon v. Michael Kors Retail, Inc.*, 468 F. Supp. 3d 409, 413 (D. Mass. 2020) (even conspicuous notice was not sufficient to establish unambiguous assent where "there was ambiguity about what checking the box signified.").

Defendant's cited authorities in support of its assertion that Plaintiffs agreed to its Terms are inapposite because they either did not involve the same visual limitations present here or concerned pure clickwrap agreements, where there was no ambiguity about which user action manifested assent. *See Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 78 (2nd Cir. 2017) ("The Payment Screen is ***uncluttered***"); *Saleh v. Udemy, Inc.*, No. 23-02207 (JXN) (JSA), 2024 U.S. Dist. LEXIS 51183, at *8 (D.N.J., Mar. 21, 2024) ("the hyperlink to the Terms is presented in a clear font in a relatively ***uncluttered*** location on the screen"); *Zachman*, 49 F.4th 95, 103 ("[t]he Internet Banking Agreement was a "***clickwrap***" or a "scrollwrap" agreement" and plaintiff "assented to the terms of the agreement by clicking '***I agree***'"); *Doe v. Massage Envy Franchising, LLC*, No. S20C-05-025 RFS, 2020 WL 7624622, at *3 (Del. Super. Dec. 21, 2020) ("[p]laintiff

manifested her assent by checking the box located next to the sentence '***I agree***'").[2] Unlike the screens in *Meyer* and *Saleh*, the screens in Exhibits B and C are anything but uncluttered.

Moreover, Defendant's reliance on *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 236–37 (2d Cir. 2016), supports Plaintiffs' position. In *Nicosia*, the Second Circuit held that there was ***no*** reasonably conspicuous notice because "unlike typical 'clickwrap' agreements, clicking '[p]lace your order' does not specifically manifest assent to the additional terms, for the purchaser is not specifically asked whether she agrees or to say 'I agree.'" *Id.* at 236. This resembles the ambiguity presented to users in Exhibit G.

**C. The FAA Does Not Favor Enforcement of Arbitration Agreements Where Contract Formation Is Disputed**

The Federal Arbitration Act ("FAA") "makes agreements to arbitrate enforceable to the same extent as other contracts." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999) *(citing Seus v. John Nuveen & Co.*, 146 F.3d 175, 178 (3d Cir. 1998)). Although "federal law presumptively favors the enforcement of arbitration agreements" (*id.*), this strong "presumption" does not automatically lead to the submission of a dispute to arbitration upon the demand of a party to the dispute. *See Century Indem. Co.*, 584 F.3d at 523; *see also Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 504 (6th Cir. 2007) ("no matter how strong [sic] the federal policy favors arbitration, arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration").

---

[2] Defendant also cites *In re Bittrex, Inc.,* No. 23-10598 (BLS), 2024 Bankr. LEXIS 1196, *6, n29 (Bankr. D. Del. May 22, 2024) however plaintiff in this case was bound by his own "judicial admission" that he "unequivocally stated that he had agreed" to the terms in his responsive pleadings.

The Third Circuit does not apply any special presumption in favor of arbitration to the question of contract formation. *See Jaludi v. Citigroup*, 933 F.3d 246, 255 (3d Cir. 2019) ("The presumption of arbitrability enters at the second step—it applies to disputes about the scope of an existing arbitration clause."). Also, the Third Circuit has established that a court's role in determining whether an arbitration agreement exists is "significant" and deliberately operates as a "brake on the FAA's speed impulse." *Guidotti,* 716 F.3d at 776. Indeed, the Third Circuit has repeatedly held that "unless the parties clearly and unmistakably agreed to arbitrate questions of contract formation in a contract whose formation is not in issue, those gateway questions are for the courts to decide." *MZM Constr. Co.,* 974 F.3d at 401–02; *see also Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 111 (3d Cir. 2000) ("courts should not assume that the parties agreed to arbitrate arbitrability" absent "clear and unmistakable" evidence); *AT&T Techs.*, 475 U.S.at 649 (same).

Here, Plaintiffs dispute the very existence of any agreement to arbitrate. Absent evidence of mutual assent, no contract exists under Delaware law. *See Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 138 (3d Cir. 2022) ("Questions about the making of the agreement to arbitrate are for the courts to decide unless the parties have clearly and unmistakably referred those issues to arbitration in a written contract whose formation is not in issue."); *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010) (because plaintiffs are directly "challeng[ing] the validity of the [arbitration] provision specifically,"…"the federal court must consider the challenge before ordering compliance with that agreement").

The FAA demands that the proponent of arbitration first establish that an agreement was *actually formed*. Hearst has not met that burden here. Because the threshold issue concerns contract formation, not scope, Defendant's argument asserting there is a broad federal arbitration policy is

irrelevant.[3] The FAA's policy favoring arbitration applies only once a contract is formed. It does not substitute for proof that the parties *actually agreed* to arbitrate.

### D. Arbitration Cannot Be Compelled Under Either Rule 12(b)(6) Or Rule 56 Because Arbitrability Is Not Apparent on the Pleadings And Material Fact Questions Remain

In the Third Circuit, a court may resolve a motion to compel arbitration under the Rule 12(b)(6) standard *only* when "it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause." *Guidotti*, 716 F.3d at 776. However, if the complaint and its supporting documents are unclear regarding the agreement, or if the plaintiff has "responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue," then "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question." *Id.* Only after this limited discovery may the court entertain a renewed motion, this time judging the motion under the Rule 56 summary judgment standard," meaning that even after the parties have taken discovery, compelling arbitration would only be appropriate if there is no genuine dispute as to the existence of a binding arbitration agreement. *Id.* All reasonable inferences must be drawn in favor of the non-moving party. *Kaneff v. Del. Title Loans, Inc.,* 587 F.3d 616, 620 (3d Cir. 2009)

[3] Defendant's reliance on these cases is inapposite because none involved a dispute over the initial formation of a contract. *See Smith v. Spizzirri*, 601 U.S. 472, 474 (2024) (addressing only whether district courts must stay or dismiss cases after determining an arbitrable dispute exists; petitioners explicitly "conceded that all of their claims were arbitrable"); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000) (noting "it is undisputed that the parties agreed to arbitrate all claims relating to their contract" and addressing only whether the agreement was unenforceable due to prohibitive costs); *Barrett v. Konica Minolta Exec. Severance Plan*, No. 24-cv-05067 (JXN)(JSA), 2025 WL 965707, at 1 (D.N.J. Mar. 31, 2025) (plaintiff expressly "acknowledged" in his complaint that he was a participant in the Plan); *SBC Interactive, Inc. v. Corp. Media Partners*, 714 A.2d 758, 761 (Del. 1998) (dispute involved the interpretation of withdrawal rights within an unquestionably valid partnership agreement, not whether the agreement itself was formed).

Here, Defendant cannot compel arbitration under the Rule 12(b)(6) because arbitrability is not apparent on the face of the Complaint. Plaintiffs' Complaint asserts statutory privacy claims (VPPA, Wiretap Acts) and common law intrusion upon seclusion. It does not rely on the Terms of Use, does not reference an arbitration agreement, and does not attach any contract as an exhibit. *See Botello v. Navient Sols., LLC*, No. 22-5601, 2023 U.S. Dist. LEXIS 170962, at *4 (D.N.J. Mar. 22, 2023) (denying motion to compel where "[p]laintiff does not rely on or reference any loan documents in her [c]omplaint. And the [c]omplaint does not reference any arbitration agreement."). Because the existence of an agreement is not established by the pleadings, the Court must look beyond them, and therefore the Motion must be evaluated under Rule 56. Defendant's own brief confirms that arbitrability cannot be resolved on the pleadings because it admits it does not maintain records of the screens viewed by these Plaintiffs. Motion at 8. That admission places formation squarely in dispute – *and requires discovery*. *See Guidotti,* 716 F.3d at 774774 ("restricted inquiry into factual issues will be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate").

Defendant's citation to *Young v. Experian Info. Sols., Inc.* does not support its position; rather, it confirms that discovery is required here. 119 F.4th 314, 321 (3d Cir. 2024).2024)). In *Young*, the Court held discovery was unnecessary only because '[t]here [was] no factual dispute about the existence of the agreement to arbitrate' and the plaintiff 'freely acknowledge[d]' entering the agreement. *Id.* at 320-321. Conversely, the *Young* court clarified that under *Guidotti,* also cited by Defendant, any time the court must make a finding to determine arbitrability, pre-arbitration discovery may be warranted'. *Id.* at 315. Here, unlike the plaintiff in *Young*, Plaintiffs vigorously dispute that they ever assented to the Terms. Because Plaintiffs do not admit the existence of a contract, the narrow exception in *Young* does not apply. Instead, *Young* dictates that where, as

here, a genuine dispute of material fact exists regarding formation, the Court must deny the Motion or allow time to take discovery under Rule 56(d).[4]

Moreover, given that the party seeking to avoid arbitration bears the burden of proving a generally applicable contract defense (*Lloyd v. Hovensa*, 369 F.3d 263, 274 (3d Cir. 2004)), pre-arbitration discovery is necessary to enable the court to resolve disputed issues of contract formation. Again, the Dalton Declaration does not provide proof of the interfaces presented to these Plaintiffs and relies on materials drawn from other publications. Without evidence specific to these transactions, the Court should deny Defendant's request for Rule 12(b)(6) relief.

### E. Defendant's Reliance on The Pre-Suit Letter Is a Mischaracterization And Does Not Establish Assent, Waiver, Or An Admission

Defendant's claim that Plaintiff's pre-suit letter reflects assent, waiver, or admission is a fundamental misrepresentation of the letter's actual content. For example, Defendant argues that Plaintiffs' counsel "previously agreed that the claims are subject to arbitration" and "acknowledged as much," and that this "recognition" shifts the burden of proof to Plaintiffs. Motion at 2, 11, 13. Because Defendant cannot produce any evidence that these Plaintiffs ever assented to its Terms, it attempts to manufacture assent from a notice letter Plaintiffs' counsel sent solely to avoid a procedural objection. Defendant cites no authority holding that a pre-suit notice letter can establish assent to an arbitration agreement or shift the burden of proving contract formation.

The letter expressly disclaims the very admission Defendant claims it makes. The letter expressly states the following:

---

[4] Plaintiffs have no obligation to produce rebuttal evidence unless and until the party seeking arbitration first meets its prima facie burden of proving the existence of a valid agreement and what Plaintiffs actually saw. Here, Defendant has not satisfied that initial burden. In fact, the Dalton Declaration concedes Hearst "does not maintain" screens for each publication (Dalton Decl. ¶ 16 n.6), and every "illustrative example" is drawn from other websites; not, contemporaneous records of what these Plaintiffs saw.

> Clients reserve all rights to challenge any aspect of the Terms, including the arbitration clause or notice requirement, with respect to its conscionability, presentation, enforceability, or in any other respect. (Motion, Ex. 1).

Defendant's assertion that this letter "shifts the burden of proof" is legally meritless. A procedural notice letter cannot create a contract where none exists, nor can it operate as a judicial admission regarding contract formation. It certainly does not satisfy Defendant's burden under the *Guidotti* framework. *See First Options of Chi., Inc.*, 514 U.S. at 944–45 (formation must be proven by the proponent, not inferred through ambiguous communication). Performing a purported condition precedent to avoid a procedural objection does not waive challenges to the validity of the terms being referenced.

A communication that plainly disclaims assent and expressly reserves the right to challenge enforceability cannot be twisted into "clear and unmistakable evidence" that the party agreed to arbitrate. *Id.* A letter that rejects enforceability and reserves all challenges is the opposite of such evidence. Consistent with that principle, the Third Circuit has held that "unless the parties clearly and unmistakably agreed to arbitrate questions of contract formation in a contract whose formation is not in issue, those gateway questions are for the courts to decide." *MZM Constr. Co.*, 974 F.3d at 400–01.

Plaintiffs' letter did not acknowledge enforceability, did not concede validity, and did not accept arbitration. Defendant resorts to this argument because it has no real evidence of assent. A letter that expressly denies enforceability, expressly rejects assent, and expressly preserves every challenge cannot serve as evidence of a contract.

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied in its entirety. In the alternative, Plaintiffs should be entitled to narrowly tailored discovery into what the Website

actually displayed to each Plaintiff at the time of their visit, whether any assent mechanism was presented, and whether Defendant's systems recorded any affirmative act of agreement.

Dated: December 15, 2025

*/s/ P. Bradford deLeeuw*
P. Bradford deLeeuw (DE Bar #3569)
DELEEUW LAW LLC
1301 Walnut Green Road
Wilmington, DE 19807
(302) 274-2180
brad@deleeuwlaw.com

*Counsel for Plaintiffs*

OF COUNSEL:
Mark S. Reich
Michael N. Pollack
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: mpollack@zlk.com