**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

CHRISTOPHER STOWE, HERB MEYEROWITZ, JIM FALLOW, JAY LITTLE, MAVERICK WATSON and HEIDI FENTON, individually and on behalf of all others similarly situated,

*Plaintiffs,*

*v.*

HEARST MAGAZINE MEDIA, INC., d/b/a BICYCLING

*Defendant.*

C.A. No. 25-1128-RGA

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Lesley F. Wolf (No. 7348)
Emily C. Friedman (No. 7054)
*Ballard Spahr LLP*
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Tel: (302) 252-4465
Fax: (302) 252-4466
WolfL@ballardspahr.com
FriedmanE@ballardspahr.com

Jonathan R. Donnellan*
Andrea R. Butler*
Kristen L. Hauser*
*The Hearst Corporation*
Office of General Counsel
300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 649-2484
Fax: (212) 554-7000
jdonnellan@hearst.com
abutler@hearst.com
khauser@hearst.com

**Admitted Pro Hac Vice*

*Attorneys for Defendant Hearst Magazine Media, Inc.*

January 8, 2026

## TABLE OF CONTENTS

INTRODUCTION .......... 1

I. HEARST'S FACTS ARE SUPPORTED AND UNCONTROVERTED .......... 2

II. ARGUMENT .......... 2

A. Plaintiffs Cannot Defeat Arbitration or Require Discovery on the Record Here. .......... 4

B. Hearst's Consumer Flows Provide Notice of Its Terms of Use and Arbitration Agreement as A Matter of Law. .......... 6

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aliments Krispy Kernels, Inc. v. Nichols Farms*,
851 F.3d 283 (3d Cir. 2017)....................3

*Bugarin v. All Nippon Airways Co.*,
No. 20-CV-03341, 2021 WL 4974978 (N.D. Cal. Oct. 26, 2021) ....................6

*Checchia v. SoLo Funds, Inc.*,
771 F. Supp. 3d 594 (E.D. Pa. 2025) ....................7

*Checchia v. SoLo Funds, Inc.*,
No. 23-2193, 2024 WL 3717491 (3d Cir. Aug. 8, 2024) ....................4

*Davitashvili v. Grubhub Inc.*,
No. 20-CV-3000, 2023 WL 2537777 (S.D.N.Y. Mar. 16, 2023)....................3, 5

*Davitashvili v. Grubhub Inc.*,
131 F.4th 109 (2d Cir. 2025) ....................3, 5, 8

*Doe v. Massage Envy Franchising, LLC*,
No. CV S20C-05-025, 2020 WL 7624622 (Del. Super. Ct. Dec. 21, 2020) ....................9

*Guidotti v. Legal Helpers Debt Resol., L.L.C.*,
716 F.3d 764 (3d Cir. 2013)....................1, 4, 10

*In re Zappos.com, Inc., Customer Data Security Breach Litigation*,
893 F. Supp. 2d 1058 (D. Nev. 2012)....................7, 8

*Kirkham v. TaxAct Inc.*,
No. 24-1515, 2025 WL 914307 (3d Cir. Mar. 26, 2025)....................7

*Kirleis v. Dickie, McCamey & Chilcote, P.C.*,
560 F.3d 156 (3d Cir. 2009)....................10

*Lyons-Graves v. Bancorp Bank N.A.*,
No. CV 24-10522, 2025 WL 2620551 (D.N.J. Sept. 10, 2025) ....................4

*Maree v. Deutsche Lufthansa AG*,
No. SACV 20-885, 2020 WL 6018806 (C.D. Cal. Oct. 7, 2020)....................5

*Nestor v. Poore*,
No. 2022-0066, 2023 WL 3736779 (Del. Ch. May 31, 2023)....................7

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ....................................................................................8

*Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*,
636 F.2d 51 (3d Cir. 1980)..........................................................................................3

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) ......................................................................................8

*Payne v. Samsung Elecs. Am., Inc.*,
No. N23C-03-193, 2024 WL 726907 (Del. Super. Ct. Feb. 21, 2024).....................................9

*Simensky v. Experian Info. Sols., Inc.*,
No. 25-1045, 2025 WL 3754509 (3d Cir. Dec. 29, 2025)...............................................1, 3, 4

*StubHub, Inc. v. Ball*,
676 S.W.3d 193 (Tex. Ct. App. 2023).........................................................................3

*Weitzner v. Sanofi Pasteur, Inc.*,
No. 11-CV-02198, 2017 WL 3894888 (M.D. Pa. Sept. 6, 2017).............................................5

*Young v. Experian Info. Sols., Inc.*,
119 F.4th 314 (3d Cir. 2024) ......................................................................................4

*Zachman v. Hudson Valley Fed. Credit Union*,
49 F.4th 95 (2d Cir. 2022) ..........................................................................................8

## INTRODUCTION

In response to Hearst's motion to compel, none of the six (6) named Plaintiffs submit any evidence to contradict what is demonstrated in Hearst's opening papers (D.I. 15, 16): each Plaintiff could not have entered into the relationship with Hearst alleged in the Complaint without agreeing to Hearst's Terms of Use ("Terms") and the arbitration agreement therein. Contrary to Plaintiffs' suggestion, Hearst does not ask this Court to "assume" anything and provides far more than just "illustrative" examples (D.I. 17 at 1, 2). It submitted the detailed Declaration of Christina Dalton (the "Declaration") describing how each Plaintiff interacted with *Bicycling*, the sign-up flows and Terms in place at the time of those interactions, and how and when each Plaintiff agreed to its Terms. (D.I. 16). In short, Hearst put before the Court precisely the type of admissible evidence sufficient to meet its burden on this motion. Plaintiffs do not dispute any of the facts in the Declaration; they merely argue that they "vigorously dispute that they ever assented to the Terms" (D.I. 17 at 14). They do not submit a statement from any Plaintiff (or any other evidence), and their Complaint on its face relies on the existence of an agreement—for subscription or newsletter or website sign-up—as the basis of their claims. (D.I. 1 ¶¶ 3, 32-37, 263; *see also* D.I. 17 at 3). In short, they offer no more than inapposite legal citation and the "'naked assertion . . . that [they] did not intend to be bound' by the arbitration agreement . . . ." *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 774 (3d Cir. 2013) (first alteration in original) (citation omitted). Plaintiffs cannot create an issue of fact, require discovery, or avoid arbitration on this record. *See Simensky v. Experian Info. Sols., Inc.*, No. 25-1045, 2025 WL 3754509 (3d Cir. Dec. 29, 2025) (not precedential). Plaintiffs should be compelled to arbitrate.

## I. HEARST'S FACTS ARE SUPPORTED AND UNCONTROVERTED

The record demonstrating each Plaintiff's agreement to Hearst's Terms is far from "thin" (D.I. 17 at 7). The Dalton Declaration details how each Plaintiff specifically interacted with Hearst and describes what each Plaintiff necessarily would have seen and agreed to as a result, all based on Dalton's personal knowledge and review of Hearst's records and contemporaneous forms. (D.I. 16 & Exs. B-G); D.I. 15, Part I ("Statement of Relevant Facts"); D.I. 1 ¶ 162 & Fig. 12 (p. 51)). Indeed, Plaintiffs do not dispute Dalton's description of the timing and nature of their interactions with Hearst. (D.I. 15, Parts I.B-C; D.I. 16 ¶¶ 22-36). Nor do they challenge the authenticity of the screen images she included. Instead, and as explained in Hearst's moving papers (D.I. 16 ¶¶ 14-16, 21; D.I. 15 at 8 n.6), Plaintiffs at best point out that some images (Exs. B, C, & G) do not include the *Bicycling* branding. (D.I. 17 at 3).

## II. ARGUMENT

Plaintiffs' answering brief makes two arguments opposing arbitration. *First*, that the evidence submitted by Hearst is insufficient to the extent it does not display "*Bicycling*" specifically or does not include certain documents they claim are needed. (D.I. 17 at 6-7). *Second*, that Hearst's evidence is insufficient because its consumer flows are "ambiguous" and do not put Plaintiffs on inquiry notice that they were agreeing to Hearst's Terms (and thus to arbitrate their claims). (D.I. 17 at 2, 4, 8-11). Both arguments are easily disposed of.

Plaintiffs' first argument ignores Dalton's uncontested testimony, based on almost 25 years of consumer marketing experience for Hearst Magazines (including *Bicycling*), detailing Plaintiffs' interactions with Hearst, that the Terms submitted as Exhibit A were in effect at all relevant times, and that the screenshots of forms from the relevant time periods attached to her declaration were identical in all relevant aspects for *Bicycling* users such as Plaintiffs (Hearst simply does not retain separately branded copies for each of its almost 30 magazine titles). (D.I. 16 ¶¶ 7, 14-16, 21, 23-

36). Nor do they cite any law suggesting that Dalton's review of records and personal knowledge are insufficient. It is not. Plaintiffs have submitted no evidence at all, let alone sufficient to create a material issue of fact to require discovery or defeat Hearst's motion to compel.[1] Hearst's motion to compel therefore is ripe for decision in its favor on this record. *See infra* Part II.A.

Plaintiffs' second argument relies heavily on inapposite (and in some cases, overturned or vacated) case law and again ignores the plain language and appearance of the Exhibits to the Declaration.[2] *See infra* Part II.B. For example, in arguing that Hearst's evidence is insufficient to establish agreement to Hearst's Terms, Plaintiffs rely on a holding by a district court in New York that defendant's evidence was *not* sufficient to establish the existence of an agreement to arbitrate that was *reversed* by the Second Circuit on that very point. D.I. 17 at 5 (citing *Davitashvili v. Grubhub Inc.*, No. 20-CV-3000, 2023 WL 2537777, at *7 (S.D.N.Y. Mar. 16, 2023), *rev'd in relevant part*, 131 F.4th 109 (2d Cir. 2025)). Plaintiffs' other cases are similarly inapposite. The relevant law makes plain that the online forms with which each Plaintiff indisputably interacted created a binding agreement. *See infra* Part II.B.

---

[1] Even *StubHub, Inc. v. Ball*, 676 S.W.3d 193, 199 (Tex. Ct. App. 2023) (D.I. 17 at 7) recognized that "when the movant's evidence remains uncontroverted, the court must accept as true 'the clear, direct, and positive evidence of an undisputed affidavit, even of a party's agent'" (citation omitted). In *Ball*, the declarations did not "explain how a potential user manifests that acceptance during the registration process." *Id*. at 202. Here, the Declaration is "sufficiently clear, direct, and positive" that Plaintiffs could not have entered into their relationships with Hearst without agreement to its Terms. *Id*. Nothing more is required. *Simensky*, 2025 WL 3754509, at *2-3.

[2] Hearst has not attempted to identify and address every reversed or abrogated case or argument upon which Plaintiffs rely. *Compare, e.g.*, D.I. 17 at 4 (suggesting "express, unequivocal agreement" standard be applied) *with Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 288 (3d Cir. 2017) (district courts should not use that standard; recognizing abrogation of *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co*., 636 F.2d 51, 54 (3d Cir. 1980)).

**A. Plaintiffs Cannot Defeat Arbitration or Require Discovery on the Record Here.**

Plaintiffs' claims depend on a contractual relationship with Hearst. (D.I. 1 ¶¶ 3, 32-37, 263; D.I. 15, Part I.C; D.I. 17 at 3). As a result, Plaintiffs are entitled to discovery and further briefing under a Rule 56 standard only "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue . . . ." *Guidotti*, 716 F.3d at 776; *see also* D.I. 15, Part II.B. Neither is true here.

Plaintiffs' counsel acknowledges that Hearst's Terms contain an arbitration agreement that at least *potentially* applies to Plaintiffs' claims (which depend on having entered into an agreement with Hearst). (D.I. 17 at 15-16). And they offer no *evidence* that would raise any doubt about Hearst's facts establishing each Plaintiff's agreement to Hearst's Terms. (D.I. 17 at 2-3 and 5-11). "In the absence of a factual dispute, there is nothing to discover and thus no need to delay a decision on the motion to compel." *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 319-20 (3d Cir. 2024)[3]; *see also Guidotti*, 716 F.3d at 776; D.I. 15 at 14. Even if the Rule 56 standard applies, Hearst's motion can be decided now without discovery because "Plaintiff has not raised additional facts sufficient to place the agreement to arbitrate in issue such that additional discovery is necessary." *Lyons-Graves v. Bancorp Bank N.A.*, No. CV 24-10522, 2025 WL 2620551, at *2 (D.N.J. Sept. 10, 2025); *see also id.* at *5 ("Plaintiff has failed to identify any specific facts or affirmative evidence to support her insinuations.. . . Plaintiff 'must present more than just "bare assertions, conclusory allegations or suspicions . . . ."'") (citation omitted). The evidence submitted

[3] *Young* would appear to call into question aspects of *Checchia v. SoLo Funds, Inc.*, No. 23-2193, 2024 WL 3717491, at *1 (3d Cir. Aug. 8, 2024). Whether a plaintiff admits to the existence of an agreement (D.I. 17 at 14) or fails to respond to evidence of an agreement as here, the result should be the same under *Young*. *See Simensky*, 2025 WL 3754509, at *2-3.

by Hearst is sufficient to meet its burden to establish each Plaintiff's interaction with *Bicycling* and agreement to Hearst's Terms.

Plaintiffs' cases do not support their contrary argument. In *Davitashvili*, 131 F.4th 109, for example, the Second Circuit reversed the district court case on which Plaintiffs rely (D.I. 17 at 5), finding "a reasonably prudent smartphone user" ***would*** have inquiry notice of the applicable Terms and therefore the arbitration agreement. *Id.* at 116. In any event, even the decision below is distinguishable, because in *Grubhub* (unlike here), defendant did ***not*** submit

> sufficient information about what its app or web page looked like when the Platform Plaintiffs initially signed up or at any other relevant time prior to December 2021. Without such information, it is impossible for the Court to conclude that the Platform Plaintiffs were on constructive notice of any arbitration agreement other than the December 2021 terms of use.

*Grubhub*, 2023 WL 2537777, at *7, *aff'd in part, rev'd in part and remanded*, 131 F.4th 109 (2d Cir. 2025).[4] Here, in contrast, the Declaration did just that.

Similarly, in *Weitzner* (D.I. 17 at 6), the declarant did not have personal knowledge with respect to certain issues in the case. *Weitzner v. Sanofi Pasteur, Inc.*, No. 11-CV-02198, 2017 WL 3894888, at *9 (M.D. Pa. Sept. 6, 2017), *aff'd*, 909 F.3d 604 (3d Cir. 2018). The court *still* found statements admissible under Federal Rule of Evidence 602 (and not hearsay) because the declarant "perceived the events" that led to his conclusions and could have so testified at trial. *Id*. Here, of course, the Declaration is made upon actual personal knowledge, and Dalton would be prepared to attest to the same matters at trial. D.I. 16 ¶¶ 1-5.

Finally, in *Maree v. Deutsche Lufthansa AG* (D.I. 17 at 7), defendant Lufthansa sought judicial notice of a current screen shot. No. SACV 20-885, 2020 WL 6018806, at *3 (C.D. Cal. Oct. 7, 2020). Lufthansa did *not*, as Hearst has done here, submit a declaration attesting that the

[4] While irrelevant here, the *GrubHub* agreement was found unenforceable as to plaintiffs' antitrust claims, since those claims did not depend on use of website or app. *Id*. at 119-20.

attached screenshots accurately represented what each plaintiff would have seen at a given point in time and that all Hearst Magazine interfaces appear the same regardless of magazine title. (D.I. 16 ¶¶ 7, 9-36). A later court found reliance on *Maree* "misplaced" on similar facts for reasons equally applicable here:

> In [*Maree*], . . . . Lufthansa represented that it was in the process of obtaining a declaration . . . to confirm that the checkout flow depicted in the screenshot was the same as at the time the plaintiff bough [sic] her tickets. The district court deferred consideration of the defendant's motion to compel arbitration pending the defendant's submission of **"information that verifies the website's design and content as it appeared** . . ." when the plaintiff booked her flight.
>
> In the present case, ANA has submitted information verifying the design and content of ASAP's website as it appeared in November 2019, when Bugarin booked her flights. . . . Mr. Vazan states that the screen flow . . ., the booking screen, and the terms and conditions have not changed in any material respect since Bugarin purchased her airline tickets . . . .
>
> . . . .
>
> This evidence is sufficient to show by a preponderance of the evidence that Bugarin entered into an arbitration agreement with ASAP . . . .

*Bugarin v. All Nippon Airways Co.*, No. 20-CV-03341, 2021 WL 4974978, at *3-4 (N.D. Cal. Oct. 26, 2021) (citations omitted). There is no genuine dispute that each Plaintiff agreed to Hearst's Terms and arbitration agreement. *See* D.I. 15, Part II.C & *infra* Part II.B.

### B. Hearst's Consumer Flows Provide Notice of Its Terms of Use and Arbitration Agreement as A Matter of Law.

Hearst's moving papers detailed the process (or "flow") by which each Plaintiff would have interacted with *Bicycling* online in a way that bound them to Hearst's Terms and the arbitration agreement contained therein. (D.I. 15, Parts I.C & II.C and D.I. 16 ¶¶ 10, 18 & Exs. D & E (newsletter signup); ¶¶ 10, 12-17, 21 & Exs. B, C, & G (purchasing or renewing a subscription); ¶¶ 10, 19-20 & Ex. F (creating a free online account)). Each flow included language about a user's agreement to the Terms and described the action to be taken to be bound. (D.I. 16, Exs. B-G). Each had hyperlinks to the Terms in a clear, contrasting font. *Id*. None were "tucked

away." *Kirkham v. TaxAct Inc.*, No. 24-1515, 2025 WL 914307, at *4 (3d Cir. Mar. 26, 2025); *see also* D.I. 15, Parts I.B & C. Hearst's Terms were not buried on the *Bicycling* website and no Plaintiff was required to scroll through any pages to see the links; instead, the links were called out conspicuously to consumers in each case. (D.I. 15, Part I; D.I. 16 ¶¶ 10-36). The Declaration explains that Hearst's documentation and screens with which Plaintiffs interacted would not have varied by title. (D.I. 16 ¶¶ 14-16, 21). To the extent Plaintiffs try to create a dispute of fact, they must "support [their] allegations with competent proof." *Nestor v. Poore*, No. 2022-0066, 2023 WL 3736779, at *5 (Del. Ch. May 31, 2023) (citation omitted). Ultimately, it does not matter how Hearst's Terms are characterized (whether "click wrap" or "signup wrap" or something else): they are enforceable because they "provide for mutual assent under any characterization of the contract," *Kirkham*, 2025 WL 914307, at *4, and provide, at a minimum, inquiry notice of the existence of terms to which Plaintiffs should have been aware they would be bound. (D.I. 15, Part II.C). That is all that is required for a binding agreement. (D.I. 15, Part II.C). Plaintiffs have made no factual showing nor submitted any statement from any Plaintiff that they were "not aware of the agreement, did not sign it, and, thus, should not be bound to it." *Nestor*, 2023 WL 3736779, at *5; *see also Checchia v. SoLo Funds, Inc.*, 771 F. Supp. 3d 594, 608 (E.D. Pa. 2025) ("a reasonably prudent internet user would expect that relationship to be governed by some terms and conditions"). In fact, Plaintiffs have submitted no evidence that any of them interacted with Hearst in any way *other* than as described in Hearst's moving papers.

*In re Zappos.com, Inc., Customer Data Security Breach Litigation*, 893 F. Supp. 2d 1058 (D. Nev. 2012) (D.I. 17 at 8), which predates decisions relied upon by Hearst and is not binding,

illustrates the weakness of Plaintiffs' argument.[5] There, the court found that "[t]he website does not direct a user to the Terms of Use when creating an account, logging in to an existing account, or making a purchase. . . . The Terms of Use is inconspicuous, buried in the middle to bottom of every Zappos.com webpage among many other links, and the website never directs a user to the Terms of Use. No reasonable user would have reason to click on the Terms . . . ." *Id.* at 1064.

Here, the links to the Terms are not buried in the middle or bottom of the *Bicycling* website; they are conspicuously presented to consumers at the time an action is sought, in close proximity to that action, and in a manner that draws attention to them and to the fact that taking an action will constitute agreement to the Terms. (D.I. 15, Parts I.B-C, II.C). As set forth in detail in Hearst's moving papers, this is sufficient (even in the absence of separate checkbox). *See, e.g.*, D.I. 15, Part II.C; D.I. 16 ¶¶ 10-21 & Exs. B-G; *see also supra* n.5; *GrubHub*, 131 F.4th at 116; *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 102-03 (2d Cir. 2022).

For example, although Plaintiffs suggest that the *Bicycling* subscription check-out process (D.I. 16, Exs. B & C) does not put consumers (such as Plaintiffs Meyerowitz and Watson) on inquiry notice of Hearst's Terms, far from being "cluttered" as Plaintiffs argue (D.I. 17 at 10-11), those forms include clear language with respect to a consumer's agreement to Hearst's Terms immediately above the checkout buttons, with colored hyperlinks to the Terms. (D.I. 16 ¶¶ 12-17, 26-27, 31-32 & Exs. B & C; D.I 15, Part II.C). Plaintiffs' suggestion that Exhibits B and C would

[5] The same is true of *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (D.I. 17 at 7). *See, e.g.*, *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024) (finding that online agreements *can* be enforceable if the link to the relevant terms is "in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it", such as "directly below key information . . . and directly below the button [Plaintiff] tapped to complete his purchase" and the hyperlinked terms are colored and contrast with the background and adjacent text) (citation omitted).

not put a reasonably prudent consumer on notice that they were agreeing to Hearst's Terms has no support in fact or law.

Plaintiffs do not even attempt to argue that the free email newsletter signup process (D.I. 18, Exs. D & E) is not clear and enforceable, nor do they dispute that Plaintiffs Little and Fenton signed up for newsletters using these screens. (D.I. 15, Parts I.C & II.C and D.I. 16 ¶¶ 18, 34, 36 & Exs. D & E). Nor do they contend that the process to register with the website (D.I. 16, Ex. F) is confusing or cluttered in any way. Nor could they. (D.I. 15, Part I.C.; D.I. 16 ¶¶ 19-20, 25, 33, 25 & Ex. F). As detailed in the Declaration, a *Bicycling* user cannot sign up for an email newsletter or register with the website (as Plaintiffs Stowe, Little, Watson, and Fenton allege they did) without using these forms. (D.I. 16 ¶¶ 18-20, 23-25, 30-36; D.I. 1 ¶¶ 32, 35-37). Plaintiffs offer no evidence to the contrary.

While Plaintiffs attempt to label Exhibit G as unclear (D.I. 17 at 10), that screen, with obvious hyperlinks to the Terms persistently highlighted in blue, also is consistent with notices that courts have held put a consumer on inquiry notice of (and bind them to) the content of a company's terms. *See, e.g.*, *Payne v. Samsung Elecs. Am., Inc.*, No. N23C-03-193, 2024 WL 726907, at *5, *8 (Del. Super. Ct. Feb. 21, 2024) ("[I]t is [Plaintiff's] own inattention in failing to look at the box or the materials contained in it that made him unaware of the contractual relationship into which he was entering with [defendant]."); *Doe v. Massage Envy Franchising, LLC*, No. CV S20C-05-025, 2020 WL 7624622, at *4 (Del. Super. Ct. Dec. 21, 2020) ("Had Plaintiff clicked on the hyperlink and opened the document, she would have been immediately put on notice of the arbitration provision"); D.I. 15, II.C. As Dalton attests, Plaintiff Fallow could not renew his subscription without seeing this screen and clicking the button; if the box was not checked, he would not receive the email newsletter he received. (D.I. 16 ¶¶ 21 & 29).

At the end of the day, Hearst submitted precisely the type of dispositive evidence that courts found lacking in the cases upon which Plaintiffs rely. (D.I. 15, Part I.C.; D.I. 16). Dalton describes the process by which each Plaintiff interacted with the applicable part of the *Bicycling* website and the details of when and how each would have done so. The Declaration includes screenshots that she attests were in place at the time of those interactions, and testimony (confirmed by Hearst's records) that no Plaintiff could have subscribed, renewed, signed up for a newsletter, or created a free account, without interacting with those screens in the ways described. That is sufficient to establish the existence of an agreement with each Plaintiff and meet Hearst's burden on this motion. Plaintiffs do not (and cannot) dispute the facts in the Declaration and offer no alternative version of the interactions that led to the supposed "subscription" relationships alleged in the Complaint. This is in stark contrast to *Guidotti*, where the plaintiff submitted a sworn statement convincingly questioning whether she had ever seen the arbitration agreement. 716 F.3d at 788-89; *compare also, e.g.*, *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156 (3d Cir. 2009) (plaintiff's affidavit sufficiently specific and non-conclusory to entitle her to discovery). On these facts, each Plaintiff entered into a binding agreement with Hearst.[6] Because Plaintiffs do not (and cannot) dispute that their claims would be subject to that agreement (D.I. 15, Part II.D), they should be compelled to arbitrate their claims, and their claims stayed pending the completion of any arbitration.

[6] Counsel now tries to re-cast its prior correspondence with Hearst (D.I. 17 at 15-16), but the admission that the letter was formal notice under the Terms from Hearst's "customers" undermines Plaintiffs' assertion that the Terms were not clear, conspicuous, and easy-to-identify.

Dated: January 8, 2026

Respectfully submitted,

*/s/ Lesley F. Wolf*
Lesley F. Wolf (No. 7348)
Emily C. Friedman (No. 7054)
*Ballard Spahr LLP*
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Tel: (302) 252-4465
Fax: (302) 252-4466
WolfL@ballardspahr.com
FriedmanE@ballardspahr.com

Jonathan R. Donnellan*
Andrea R. Butler*
Kristen L. Hauser*
*The Hearst Corporation*
Office of General Counsel
300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 649-2484
Fax: (212) 554-7000
jdonnellan@hearst.com
abutler@hearst.com
khauser@hearst.com

**Admitted Pro Hac Vice*

*Attorneys for Defendant*
*Hearst Magazine Media, Inc.*